UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                            :
HOWARD LEVINE,                              :    06 Civ. 14324 (RJH)
                                            :
                    Plaintiff,              :
                                            :    **MEMORANDUM OPINION**
          -against-                         :    **AND ORDER**
                                            :
ATRICURE, INC., et al.                      :
                                            :
                    Defendants.             :
                                            :
------------------------------------------------------------x

      Before the Court are two motions: a motion to dismiss named plaintiff Howard Levine's complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure; and a motion to appoint James Duncan and Jackie Byrd as lead plaintiffs and to approve their selection of co-lead counsel. Defendants AtriCure, Inc., David J. Drachman, and Thomas Etergino oppose the motion to appoint lead plaintiffs by arguing that Howard Levine, the sole named plaintiff, lacks standing, and thus the Court is without jurisdiction to even consider the lead plaintiff motion and must dismiss the Complaint. For the reasons that follow, defendants' motion to dismiss the complaint is DENIED and the motion to appoint Duncan and Byrd as lead plaintiffs is GRANTED.

## BACKGROUND[1]

      AtriCure, Inc. ("AtriCure" or "the Company") develops, manufactures, and sells surgical devices designed to create precise lesions in cardiac and soft tissues. (Compl. ¶ 17.) The corporation made an initial public offering ("IPO") in August 2005, with defendants UBS Securities LLC and Piper Jaffray & Co. as lead underwriters. Levine brings this action on

---

[1] Facts are taken from the complaint and documents attached, incorporated by reference, or relied on therein.

behalf of himself and all persons "who purchased the common stock of AtriCure pursuant and/or traceable to the Company's initial public offering on or about August 4, 2005 through February 16, 2006." (Compl. ¶ 1.)

The Complaint alleges that AtriCure and certain of its officers and directors violated the Securities Act of 1933 ("Securities Act") by failing to disclose material facts in the Registration Statement and Prospectus ("Registration Statement") issued in connection with AtriCure's public offering. (Compl. ¶ 20.) Specifically, the Complaint alleges that AtriCure "failed to disclose that the Cleveland Clinic, where a significant portion of procedures with its products were being performed, was an investor in the Company and that doctors from the Cleveland Clinic had been paid consultants to the Company." (Compl. ¶ 25.)

On December 12, 2005, the *Wall Street Journal* published an article that revealed that the Cleveland Clinic used the AtriCure device in a large number of procedures and was a participant in an investment fund that was a significant shareholder in the Company, and that several doctors at the Cleveland Clinic had been paid consultants to the Company. (Compl. ¶ 27.) The article focused on potential conflicts of interest between the Cleveland Clinic and its patients stemming from its failure to disclose these facts to patients. On February 16, 2006, AtriCure announced its financial results for the fiscal year ended December 31, 2005, and disclosed, among other things, that the Company was experiencing a "negative impact" on its business due to these revelations. (Compl. ¶ 28.) Finally, the Complaint alleges that in response to this announcement, the price of AtriCure common stock dropped from $10.36 per share to $8.04 per share on extremely heavy trading volume. (Compl. ¶ 29.)

According to the Certification accompanying the Complaint,[2] Levine purchased 250 AtriCure shares at $12 per share on August 9, 2005 and sold all of those shares at $11.80 on November 21, 2005 for a total loss of $50. (Certification ¶ 4.) This sale was three weeks *before* the *Wall Street Journal* disclosed to the general public the allegedly omitted facts. Proposed co-lead plaintiffs Byrd and Duncan, on the other hand, both sold their AtriCure common shares after February 2006, when AtriCure released its financial results, for a combined loss of over $1,500.[3] (Decl. of David A. Rosenfeld, Ex. B.)

On December 11, 2006, one year after the *Wall Street Journal* article was published and one day before the expiration of the limitations period provided for § 11 actions, *see* 15 U.S.C. § 77m, plaintiff Levine initiated this lawsuit. On January 23, 2007, defendants moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure based on deficiencies of the named plaintiff. Specifically, defendants argued that by selling his AtriCure shares prior to the publication of the allegedly undisclosed facts in the *Wall Street Journal*, Levine would be unable to demonstrate that he was injured by the nondisclosure and therefore both failed to state a claim and lacked standing to bring this action. Before an opposition had been filed, the Court stayed briefing on the Rule 12(b) motion at plaintiff's request until the time for filing a lead plaintiff motion had expired. Putative class members Byrd and Duncan filed their lead plaintiff motion on February 9, 2007, within the time period set by the statute. *See* 15 U.S.C. § 77z-1(a)(3). The original named plaintiff, Levine, did not file a lead plaintiff motion. Defendants opposed the motion

---

[2] Pursuant to 15 U.S.C. § 77z-1(a)(2)(A), plaintiffs seeking to serve as class representatives in securities actions must provide a sworn certification setting forth all of their transactions in the security that is the subject of the complaint during the class period.

[3] Duncan purchased 200 shares on October 26, 2005 in 100 share increments at $12.80 and $12.91. He sold all the shares on March 24, 2006 at $7.36. (Decl. of David A. Rosenfeld, Ex. A at 1 ¶ 4.) Byrd purchased 100 shares on August 8, 2005 at $14.19 and 70 more shares on May 9, 2006 at $7.90. She sold all the shares on December 7, 2006 at $9.28. (*Id.* at 2 ¶ 4.)

by again asserting Levine's lack of standing, referring to the substance of their Rule 12(b) motion, and argued that the Court was without jurisdiction to even consider the lead plaintiff motion and must dismiss the Complaint. Finally, the Court directed the parties to finish briefing on the Rule 12(b)(1) motion before addressing both motions.

**DISCUSSION**

Because defendants have raised the possibility that the Court is without jurisdiction, the Court must first consider this assertion before turning to the motion to appoint lead plaintiffs. This requires resolution of two questions: (1) Does the alleged absence of loss causation deprive the plaintiff of standing? (2) If so, does the absence of standing preclude the Court from resolving a lead plaintiff motion that would cure the defect in standing? The Court finds that Levine has adequately pled constitutional standing, and thus it need not address the latter question. Turning then to the lead plaintiff motion, the Court finds that putative class members Byrd and Duncan have made an adequate showing and grants their motion to be appointed lead plaintiffs. Finally, the Court rejects defendants' argument that it should deny the lead plaintiff motion as an abuse of the Private Securities Litigation Reform Act of 1995.

**I.    Loss Causation**

Loss causation (i.e. a causal connection between the material misrepresentation or omission and plaintiff's loss) is not an element of a § 11 claim under the Securities Act. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 411 F. Supp. 2d 377, 382 (S.D.N.Y. 2006) ("A plaintiff need only plead a material misstatement or omission in the registration statement to establish a prima facie fraud claim under § 11 of the Securities Act; a plaintiff is not required to plead loss causation." (citation omitted)); *Adair v. Kaye Kotts Assocs.*, No. 97 Civ. 3375

4

(SS), 1998 U.S. Dist. LEXIS 3900, at *24 (S.D.N.Y. Mar. 27, 1998) ("Loss causation is not an element of a Section 11 claim."); *cf. Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("loss causation" *is* a required element of a § 10(b) claim). Rather, Congress enacted § 11(e), which makes the absence of loss causation, also known as "negative causation," an affirmative defense to reduce or avoid liability under § 11. *See* 15 U.S.C. § 77k(e); *Akerman v. Oryx Commc'ns Inc.*, 810 F.2d 336, 341 (2d Cir. 1987) ("[S]ection 11(e) expressly creates an affirmative defense of disproving causation.").

As an affirmative defense, the burden of disproving loss causation falls on defendants, reflecting Congress's "desire to allocate the risk of uncertainty to the defendants." *Akerman*, 810 F.2d at 341; *see also Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969) ("Civil liability under section 11 and similar provisions was designed not so much to compensate the defrauded purchaser as to promote enforcement of the Act and to deter negligence by providing a penalty for those who fail in their duties."). Thus, § 11 can be said to create a factual presumption that "any decline in value is . . . caused by the misrepresentation in the registration statement." *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995) (citing *Greenapple v. Detroit Edison Co.*, 618 F.2d 198, 203 n.9 (2d Cir. 1980) ("plaintiff need show no causal connection between the decline in the price of the security and the materially false misstatement or omission")).

Because an analysis of causation is often fact-intensive, negative causation is generally established by a defendant on a motion for summary judgment or at trial. Thus, in *In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610 (JFK), 2005 U.S. Dist. LEXIS 18701 (S.D.N.Y. Aug. 30, 2005), Judge Keenan vacated his earlier decision on a Rule 12(b)(6) motion and allowed plaintiffs to assert a § 11 claim for damages for declines in share value

*prior* to the first alleged disclosure. *Id.* at *3. The court found that "[t]o conclude otherwise places a burden of pleading loss causation on the plaintiffs, and removes the burden of establishing negative causation from the defendants, where it properly lies." *Id.* at *5.

In support of the contrary position, defendants rely primarily upon *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, in which Judge Pollack granted a motion to dismiss a § 11 claim pursuant to Rule 12(b)(6) based on the absence of loss causation, after finding the absence was apparent from the face of the complaint.[4] 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003). The court relied on a finding that the decline in plaintiff's share price was proportional to sector-wide declines and plaintiff's losses occurred before the first alleged disclosure of the omission. However, the court cited no other cases in which a Rule 12(b)(6) motion to dismiss was granted based on the absence of loss causation in a § 11 claim.

Rather, the decisions relied on were all distinguishable—either made on motions for summary judgment or after trial or involving claims where the burden of proving loss causation fell on the plaintiff. On a summary judgment motion or at trial, of course, the plaintiff may come forward with evidence suggesting that the price decline, despite first appearances, did in fact result from the alleged nondisclosure. *See Akerman*, 810 F.2d at 343; *Beecher v. Able*, 435 F. Supp. 397, 407 (S.D.N.Y. 1975). At the Rule 12(b)(6) stage, on the other hand, the plaintiff has no such opportunity or burden and therefore a plaintiff's failure to present evidence demonstrating loss causation is far less significant. For claims brought under § 10(b) of the Exchange Act or § 12(2) of the Securities Act, the burden of pleading and eventually proving loss causation is on the plaintiff and his or her failure to do so is proper

---

[4] Allowing a defendant to file a Rule 12(b)(6) motion asserting negative causation is merely an application of the general rule that an "affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)

6

grounds for dismissal. *See Dura Pharm., Inc.*, 544 U.S. at 342; *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005); *Goodridge v. Harvey Group, Inc.*, 778 F. Supp. 115, 129 (S.D.N.Y. 1991). In contrast, plaintiffs have no obligation to plead or prove loss causation in § 11 cases, *Adair*, 1998 U.S. Dist. LEXIS 3900, at *24; rather, causation is presumed, *McMahan & Co.*, 65 F.3d at 1048.[5]

It is generally the case that declines in the value of shares prior to the public disclosure of previously omitted information may not be charged to the defendant. *See McMahan & Co.*, 65 F.3d at 1049; *Akerman*, 810 F.2d at 342. However, this is not necessarily the case in situations, for example, where the negative undisclosed information leaks into the marketplace. Defendants decry Levine's failure to allege that the information in the *Wall Street Journal* had leaked to the market prior to his sale of the stock. However, this inverts the burden of proof. It is defendant's burden, not plaintiff's, to show when information first entered the marketplace. The *Wall Street Journal* article may turn out to be, but is not inevitably, the first time the information reached the marketplace.[6] Thus, the Complaint does

---

[5] In their reply memorandum in support of the motion to dismiss, defendants cite to several additional cases dismissing § 11 complaints pursuant to Rule 12(b)(6) where the complaint failed to allege any corrective disclosures before plaintiffs sold their securities. *See Davidco Investors, LLC v. Anchor Glass Container Corp.*, No. 8:04cv2561T-24EAJ, 2006 U.S. Dist. LEXIS 11527, at *74–*79 (M.D. Fla. 2006); *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 866 (N.D. Tex. 2005); *In re McKesson HBOC Secs. Litig.*, 126 F. Supp. 2d 1248, 1262 (N.D. Cal. 2000). These cases fail to recognize the possibility that declines in stock price prior to broad public disclosure may be reflective of leaking of relevant information into the marketplace. In the Court's view, such an oversight improperly ignores the presumption of causation, at least where price declines prior to the sale of plaintiff's shares are not shown to be consistent with sector-wide performance. *See In re Merrill Lynch*, 272 F. Supp. 2d at 255 (dismissing § 11 claim at Rule 12(b)(6) stage where decline in plaintiff's stock value prior to first alleged disclosure was consistent with sector-wide declines).

[6] Indeed, a review of AtriCure stock prices in the months proceeding Levine's sale of the stock shows a sharp price decline in late October 2005 to below Levine's purchase price that is not reflected in the medical equipment sector. (*See* http://bigcharts.marketwatch.com); *In re Allied Capital Corp. Sec. Litig.*, No. 02 Civ. 3812 (GEL), 2003 U.S. Dist. LEXIS 6962, at *8–*9 (S.D.N.Y. Apr. 25, 2003) (on motion to dismiss, the court may take judicial notice of "well-publicized stock prices") (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000)). While this serves to distinguish this case from Judge Pollack's decision in *In re Merrill Lynch*, even if the decline was proportional to a decline in the medical equipment sector, the Court would nonetheless be reluctant to hold at the pleading stage that as a matter of law, the decline was not attributable to the conflicts of interest allegedly omitted from the Registration Statement. It is defendants' burden to make this showing.

not on its face negate the factual presumption of causation, as it must for defendant to succeed at this early stage.[7] At the summary judgment stage,[8] defendant may have a surefire affirmative defense of negative causation, but Levine would then have the opportunity (and obligation) to rebut that defense.[9]

## II. Standing

Defendants push their negative causation argument even further, suggesting that negative causation is grounds not only for dismissal under Rule 12(b)(6), but also deprives the plaintiff of constitutional standing and thus the Court of jurisdiction. The three prongs of constitutional standing are familiar: (1) an "injury in fact"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) the injury is redressable by a favorable decision by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). Defendants argue that because loss causation is absent, Levine cannot show that his injury is traceable to defendants' conduct, and the Court should dismiss the case pursuant to Rule 12(b)(1). *See, e.g.*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 5 (2004) (plaintiff must have "standing to invoke the jurisdiction of the federal courts").[10]

---

[7] The Complaint does state that the *Wall Street Journal* "revealed" the allegedly undisclosed information. (Compl. ¶ 27.) However, that the article revealed information in a widely read publication to the general public is not necessarily inconsistent with the information entering into the market through other channels.

[8] Defendants did not request that the Court convert their Rule 12(b)(6) motion into one for summary judgment. *See* Fed. R. Civ. P. 12(b) (if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment"). In any event, it would be inappropriate to do so as resolution of a summary judgment motion could well require expert testimony that declines in price prior to Levine's sale of AtriCure shares were unrelated to the underlying alleged conflicts of interest.

[9] A contrary holding would give a plaintiff in a § 11 case the perverse incentive not to plead any corrective disclosure at all, as disclosure is not a pleading requirement yet may provide grounds for the defendant to seek dismissal. Were Levine to have omitted any reference to the *Wall Street Journal* article and the Company's press release, he would have still stated a § 11 claim and defendant would be unable to argue that the absence of loss causation was apparent from the face of the Complaint.

[10] Defendants argue that by failing to file a lead plaintiff motion, Levine is actually conceding that he lacks standing. (*See* Defs.' Objections 2–3.) This argument proves too much. At most, plaintiff's counsel concedes Levine is subject to a stronger affirmative defense on loss causation than Byrd and Duncan. In any event, a named plaintiff has no duty to file a lead plaintiff motion because a court can appoint him or her lead plaintiff based on the filing of the underlying complaint. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii).

Defendants' novel legal theory, making affirmative proof of loss causation an element of standing in § 11 actions, is (1) contrary to the statutory treatment of loss causation in claims under § 11 and (2) not supported by any case law. There is a clear tension between a legal theory which requires plaintiff to affirmatively plead and prove loss causation to have standing, and § 11's placement on defendant of a burden to disprove loss causation. The ambiguity of the causal connection between misleading registration statements and declines in share value was exactly the reason Congress chose to place the burden of disproving causation on defendants. If the absence of loss causation deprived a plaintiff of standing in a § 11 action, then any defendant with a plausible loss causation defense could raise it as a threshold issue and shift the burden to plaintiff. *See Bd. of Educ. v. New York State Teachers Ret. Sys.*, 60 F.3d 106, 109 (2d Cir. 1995) (burden of alleging facts establishing standing rests with plaintiff). The deterrent effect of § 11 would be compromised. There is no compelling reason why the factual presumption that a decline in value is caused by the misrepresentation in the registration statement does not apply with equal force in a constitutional standing inquiry.[11] A contrary ruling would render nugatory the entire loss causation jurisprudence discussed *supra*.

Nor is this unorthodox theory supported by any case law. Plaintiff is able to cite to only one case granting a 12(b)(1) motion to dismiss in a § 11 case based on a lack of constitutional standing. In the last several pages of a fifty-five page opinion, Judge Kram in *In re AOL Time Warner Sec. & ERISA Litig.* ("*In re AOL*"), 381 F. Supp. 2d 192, 245–46

---

[11] Defendants argue that Congress cannot by statute nullify the Article III standing requirements. *See Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 100 (1979) ("In no event, however, may Congress abrogate the Article III minima: A plaintiff must always have suffered a distinct and palpable injury to himself that is likely to be redressed if the requested relief is granted." (internal quotation marks and citations omitted)). Assuming that the "Article III minima" also includes traceability, the Court is not holding that Congress abolished this prong altogether, but rather that it created a factual presumption of loss causation in § 11 cases. *See McMahan & Co.*, 65 F.3d at 1048.

9

(S.D.N.Y. 2004) found that plaintiff lacked standing because he could not allege an "injury in fact" and accordingly dismissed the case pursuant to Rule 12(b)(1). This case is clearly distinguishable. In *In re AOL*, plaintiff sold defendant's shares in question for a *greater* price than it purchased them. The Court relied not on an absence of loss causation, but on the absence of any loss at all. This failure to plead any factual allegation of a monetary loss went to the first prong of the standing analysis. *See id.* at 246 ("Absent any factual allegation of "injury in fact" plaintiffs lack Article III standing."). Defendants, in contrast, assert the failure of plaintiff to demonstrate that the injury is traceable to defendants' actions, a far more ambiguous inquiry into the fluctuations of the securities market. Thus, *In re AOL* lends no support to defendants' theory.

To avoid dismissal for lack of constitutional standing, the Court finds that a plaintiff need only allege that he purchased a security pursuant to a false or misleading registration statement, and that at the time of the sale of the security or at the end of the class period, the value of the security had declined.[12] As with a Rule 12(b)(6) motion, *see McMahan & Co.*, 65 F.3d at 1048, the Court will observe the factual presumption at the pleading stage that any decline in value was caused by defendants' alleged omissions or misrepresentations in the registration statement, subject, of course, to an affirmative defense that this was not the case. Under this test, plaintiff Levine has adequately alleged constitutional standing, and thus the complaint is not subject to dismissal on that ground. Accordingly, the Court need not consider whether it would have jurisdiction to rule on a lead plaintiff motion where the

---

[12] Because the extent to which a plaintiff must support the elements of standing depends on the stage of the litigation, the Court confines this holding to a Rule 12(b)(1) motion brought at the pleading stage. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." (citations and internal quotation marks omitted)).

original plaintiff was determined to lack constitutional standing. The Court turns now to the lead plaintiff motion filed by proposed co-lead plaintiffs Duncan and Byrd.

## III. Lead Plaintiff Motion

The Private Securities Litigation Reform Act of 1995 ("the PSLRA") established a procedure by which the most adequate representative of the putative class will be the named plaintiff. *See* 15 U.S.C. § 77z-1(a)(3). The first plaintiff filing an initial action must publish notice of the lawsuit within twenty days in proper publications. 15 U.S.C. § 77z-1(a)(3)(A). Within sixty days of publication, any class member, whether a plaintiff in a current action or not, may apply to be appointed lead plaintiff. *Id.* Often, lead plaintiff motions are combined with motions to consolidate actions brought by multiple class members. *See, e.g.*, *In re Royal Group Techs., Ltd. Sec. Litig.*, 237 F.R.D. 55 (S.D.N.Y. 2006); *Barnet v. Elan Corp., PLC.*, 236 F.R.D. 158 (S.D.N.Y. 2005); *Dolan v. Axis Capital Holdings Ltd.*, No. 04 Civ. 8564 (RJH), 2005 U.S. Dist. LEXIS 6538 (S.D.N.Y. Apr. 13, 2005). The Court then selects the "most adequate plaintiff," which is presumed to be the person or group of persons that: (1) has filed the complaint or made a motion in response to the notice described above; (2) has the largest financial interest in the relief sought; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 77z-1(a)(3)(B).

Duncan and Byrd have submitted evidence to the Court demonstrating that they satisfy these criteria. They have filed a motion in response to the notice published by Levine. They collectively purchased 300 shares of AtriCure common stock and lost over $1,500 in connection with those purchases. This represents a greater financial interest than that of Levine. And they have made a preliminary showing that they satisfy the requirements of Rule 23 addressing the personal characteristics of a class representative—typicality and adequacy.

*See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003). In contrast, there are concerns as to whether Levine could satisfy the requirements of Rule 23. Defendants do not specifically attack the qualifications of Duncan and Byrd, although they suggest that Rule 23 discovery may reveal defects that preclude them from serving as class representatives. Instead, defendants draw attention to Levine's purported lack of standing, resolved *supra*.

## IV. Abuse of the PSLRA

Defendants additionally argue that the Court should deny the lead plaintiff motion because it is abusing a process created by the PSLRA and "makes a travesty of the reforms enacted by Congress in the PSLRA." (Defs.' Objections 12.) Defendants accuse plaintiff's counsel of using Levine as nothing more than a placeholder, chosen not because of his injuries, but to avoid the expiration of the statute of limitations and provide them with time and a procedure to find a viable plaintiff. The Court finds this to be an insufficient ground for denying the lead plaintiff motion.

Section 11 was meant to deter security violations and promote enforcement of the Securities Act. *See Globus*, 418 F.2d at 1288. To dismiss this litigation would undermine this goal, by preventing defendants, if the allegations prove true, from being held accountable. The PSLRA, passed in 1995 and implementing significant substantive changes to federal securities law, was meant "to reduce significantly the filing of meritless securities lawsuits." *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166–67 (2d Cir. 1999) (citing H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730). Defendants do not argue (and properly so at this stage) that this litigation is frivolous, in which case their request to deny the lead plaintiff motion and dismiss the lawsuit might satisfy

this goal. Levine properly followed the notice provision of the PSLRA and Byrd and Duncan properly filed a lead plaintiff motion seeking appointment as lead plaintiffs. This hardly makes a travesty of the PSLRA.

This is not to say that the plaintiffs' bar may use a plaintiff merely as a placeholder in securities litigation to obtain a several month extension in which to find an adequate plaintiff. If it is entirely clear that the named plaintiff's claim was without legal basis, then it may be appropriate to consider sanctions; dismissing the case, the ultimate sanction, should be used with caution, however, as it will severely prejudice the entire class. Plaintiff's counsel argues in this case that: (a) plaintiff Levine sold at a loss due to a price decline between the IPO and the date of his sale; (b) plaintiff Levine has no duty to plead or prove loss causation; and (c) defendants have the burden of proving that the price decline prior to plaintiff's sale was not caused by the dissemination of nondisclosed, material information into the marketplace. (Pl.'s Reply 6–7 n.3.) While the factual issues raised by plaintiff's argument may ultimately be decided against him, the underlying legal contentions are sound and hardly support a conclusion that Levine initiated the instant action as a mere placeholder.

For the foregoing reasons, the Court appoints James Duncan and Jackie Byrd as lead plaintiffs. Subject to the approval of the Court, the most adequate plaintiff may select and retain counsel to represent the class. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). Duncan and Byrd have selected the law firms of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") and Shuffrin Barroway Topaz & Kessler, LLP ("SBTK") as co-lead counsel. The two firms collectively possess considerable securities and class action experience and frequently work together. The Court finds no reason to disturb Duncan and Byrd's selection of counsel.

## CONCLUSION

Defendants' motion to dismiss Levine's complaint **[4, 8]** is DENIED. The motion to appoint James Duncan and Jackie Byrd as lead plaintiffs **[12]** is GRANTED. The Court approves Duncan and Byrd's selection of Lerach Coughlin and SBTK as co-lead counsel.

SO ORDERED.

Dated: New York, New York
September 13, 2007

Richard J. Holwell
United States District Judge