UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOWARD LEVINE, ET AL.,

                              Plaintiffs,

          - against -

ATRICURE, INC., ET AL.,

                              Defendants.

1:06-cv-14324-RJH

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, District Judge:

        Defendants AtriCure, Inc. ("AtriCure" or the "Company"), David J. Drachman and Thomas Etergino (collectively, "defendants") move for reconsideration under Local Civil Rule 6.3 of the Court's September 13, 2007 Memorandum Opinion and Order, *see Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268 (S.D.N.Y. 2007), denying their motion to dismiss the complaint or, in the alternative, to certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(6) and to stay proceedings pending any such appeal. For the reasons stated below defendants' motion is denied.

## BACKGROUND

        As discussed in greater detail in the September 2007 Opinion, plaintiff purchased shares of AtriCure, a medical device company, in an initial public offering ("IPO") at $14 per share in August 2005. The purported class action complaint alleges that AtriCure's Registration Statement was materially misleading because it failed to disclose a damaging conflict of interest arising out of the fact that the Cleveland Clinic, a prestigious hospital that used an AtriCure device, had an interest in the Company through an investment fund and that several of the hospital's doctors were paid consultants to the

Company. (Compl. ¶ 55.) The complaint also alleges that the *Wall Street Journal* published an article on December 12, 2005 that disclosed the alleged conflict of interest, and that on February 16, 2006 the Company issued a press release stating that it believed it was experiencing a "negative impact" on its business as a result of recent newspaper articles published in December 2005. (*Id.* ¶¶ 27-28.) In response to this announcement the price of AtriCure shares declined from $10.36 per share to $8.04 per share. (*Id.* ¶ 29.) During the period between the August 4, 2005 IPO and the December 12, 2005 *Wall Street Journal* article, the price of AtriCure shares traded at a high of $14.95/share (on August 11, 2005) and a low of $10.67/share (on October 28, 2005). According to the certification attached to his complaint, plaintiff purchased 250 shares on August 9 at $12.00 per share and sold them at a slight loss ($11.80 per share) on November 21, 2005. The complaint alleges that plaintiff and other members of the purported class sustained damages due to the decline in value of the shares subsequent, and due to, defendants' misleading registration statement. (Compl. ¶ 38.)

In their motion to dismiss, defendants argued, *inter alia*, that because plaintiff sold his shares before publication of the *Wall Street Journal* article he had not plead and could not plead an essential element of his claim under § 11 of the Securities Act of 1933, namely "loss causation." (Def.'s Mot. to Dismiss Mem. 2-3.) Indeed, according to defendants, the absence of loss causation was apparent on the face of the complaint. (*Id.*) Further, because plaintiff could not show that his loss was actually caused by the alleged non-disclosures plaintiff also lacked constitutional standing to sue, thus depriving this Court of subject matter jurisdiction. (*Id.*)

In denying the motion to dismiss the Court, relying on *McMahon & Co. v. Wherehouse Entertainment, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995), concluded that a plaintiff in a § 11 case is not required to plead or prove loss causation. (*See Levine*, 508 F. Supp. 2d at 272.) Rather, under § 11(e) of the 1933 Act, the absence of loss causation, also known as "negative causation," is an affirmative defense that is defendants' burden to plead and prove. (*See id.* at 272-74.) While declines in the value of shares prior to a corrective disclosure of previously undisclosed information generally will establish negative causation, the complaint did not on its face negate causation and, therefore, defendants' motion came under the wrong rule (12 instead of 56) and was premature. (*Id.* at 274.) With respect to the issue of Article III standing, the Court concluded that plaintiff's allegations that he purchased AtriCure shares pursuant to a false or misleading registration statement, and that at the time he resold the shares their value had declined, properly alleged injury-in-fact traceable to defendants' actions as required by *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), and related cases. (*See Levine*, 508 F. Supp. 2d at 274-76.)

## DISCUSSION

**1.    The Complaint Does Not, Standing on its Own, Establish Negative Causation**

After defendants filed their initial memorandum in support of their motion to dismiss, the Supreme Court decided *Bell Atlantic v. Twombly* 550 U.S. 544, 127 S.Ct. 1955 (2007). In *Twombly*, the Court "retired" the familiar formulation of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a motion to dismiss must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." In its place, the Court held that while "we do not require

heightened fact pleading of specifics," a complaint must allege "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.  Defendants contend that *Twombly* imposes a more "stringent" standard of pleading under Rule 8.  With a finer point, the Second Circuit after "careful consideration of . . . the conflicting signals" in *Twombly* concluded that the Supreme Court "is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 158 (2d Cir. 2007), *cert. granted sub nom. Ashcroft v. Iqbal*, 128 S. Ct. 2931 (2008). Putting aside the question of whether imposition of a "plausibility standard" creates a pleading standard that falls somewhere between what was required by *Conley* and the more demanding standard of Federal Rule of Civil Procedure 9(b), defendants argue that this Court overlooked *Twombly* and that its application mandates dismissal of the complaint because plaintiff has not alleged "enough facts" to show that his "claim to relief is plausible on its face."  (Def.'s Recon. Mem. 2 (quoting *Twombly* 127 S. Ct. at 1974).)  Under the Court's Local Civil Rule 6.3, reconsideration is of course appropriate where a court overlooks "controlling decisions . . . that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court."

Plaintiff cries foul, pointing out that defendants completely ignored *Twombly* in every written submissions made to the Court after *Twombly* was decided.  (Pls.' Recon. Opp. Mem. 4-5.)  This is a fair point, although defense counsel did make a reference to *Twombly* during the course of oral argument.  (Aug. 15, 2007 Tr., at 9.)  Defendants

make an interesting point, however, in explaining why they did not cite *Twombly* in their motion to dismiss papers: "[T]he AtriCure Defendants believed that their argument [that plaintiff's complaint on its face established the absence of loss causation] to be a complete answer . . . whether the *Twombly* or pre-*Twombly* pleading standard applied." (D. Recon. Reply Mem. 2.)  The Court agrees with at least one aspect of this statement, that defendants' central argument does not turn on whether the *Conley* or *Twombly* pleading standard applies.  For this very reason, however, the motion for reconsideration must fail, as explicit consideration of *Twombly* does not alter the result of the Court's earlier decision.

Though framed as a *Twombly* argument, defendants' central claim is nothing more than an attempt to apply the unexceptional holding of *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998), first cited in defendants' original motion to dismiss, that "an affirmative defense [here, negative causation] may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, *if the defense appears on the face of the complaint*." *Id.* at 74 (emphasis added); *cf.* Defs.' Recon. Memo 15 ("Where, as here, the plaintiff has pleaded facts that without more, establish an affirmative defense to his claim, he plainly has not met that [*Twombly*] standard.").  This well-settled aspect of federal pleading practice has little to do with the specificity (or "plausibility," in *Twombly* terms) of the plaintiff's prima facie claim to relief.  Instead, the doctrine recognizes that a litigant may plead itself out of court by unintentionally alleging facts (taken as true) that establish an affirmative defense:

> In a situation involving the barring effect of an affirmative defense, the
> claim is stated adequately from that perspective, but in addition to the

> claim the contents of the complaint includes matters of avoidance that
> effectively vitiate the pleader's ability to recover on the claim. . . . [T]he
> problem is not that the plaintiff merely has anticipated the defendant's
> answer and tried to negate a defense he believes his opponent will attempt
> to use against him; rather, the plaintiff's own allegations show that a
> defense exists that legally defeats the claim for relief.

Charles Alan Wright & Arthur R. Miller, 5B Federal Practice and Procedure § 1357, at

708-13 (3d ed. 2004). *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("A complaint

is subject to dismissal for failure to state a claim if the allegations, taken as true, show the

plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred

by the applicable statute of limitations, the complaint is subject to dismissal for failure to

state a claim; that does not make the statute of limitations any less an affirmative defense

. . . .");[1] *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) ("A

litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a

defense . . . but this complaint does not do so . . . .");

*Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,*

*LLP*, 322 F.3d 147, 158 (2d Cir. 2003) ("[A] complaint can be dismissed for failure to

state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense 'if the

defense appears on the face of the complaint.'" (quoting *Pani*)).

　　　*Twombly* did not alter this basic rule, and the Court does not disagree with

defendants' reading of *Pani*, pre- or post-*Twombly*. *See Levine*, 508 F. Supp. 2d at 273

n.4. As one court applying *Twombly* holds, "[a]lthough 'complaints do not have to

anticipate affirmative defenses to survive a motion to dismiss, [an] exception occurs

where . . . the allegations of the complaint set forth everything necessary to satisfy the

---

[1] *Jones*, like *Twombly*, was decided during the Supreme Court's 2006 term. This Court
finds it exceedingly unlikely that in *Twombly*, the Supreme Court intended to overrule a
decision issued a mere four months earlier.

affirmative defense, such as when a complaint plainly reveals that an action is untimely . . . ." *Irvin v. City of Chicago*, No. 07C 1207, 2007 WL 3037051, at *1 (N.D. Ill. Oct. 15, 2007) (citation omitted).  The Court does, however, disagree that plaintiff's complaint, standing on its own, establishes the affirmative defense of negative causation.

Defendants assert that the complaint "alleges that Levine sold all his shares *prior* to the first public revelation of the allegedly undisclosed facts, in which case the alleged non-disclosure could not have caused Levine's injury." (Pls.' Recon. Mem. 10 (emphasis in original).)  Yet the Court has searched in vain for the purported admission that the "first" disclosure of the alleged material omission was made in the *Wall Street Journal* article published on December 12, 2005.  Given that plaintiff sold his shares on November 21, 2005, it is hardly surprising that, in fact, he does not allege that the "first" disclosure was made after he sold.  Defendants seem aware of this hole in their argument as they further contend that they have undertaken a search of public materials that has allegedly revealed no disclosures of the alleged conflicts of interest between the August IPO and the December *Wall Street Journal* article, a search that, of course, would be unnecessary if plaintiff had admitted as much in his complaint.  Moreover, defendants themselves contend that the contested information regarding possible conflicts of interest between AtriCure and Cleveland Clinic was not "first" disclosed in the December *Wall Street Journal* article but had actually been disclosed before the IPO was launched in August, 2005.  (Nov. 20, 2007 Tr., at 12-13.)  That fact, if proven, would likely defeat plaintiff's claim on summary judgment but does nothing to advance the present argument that plaintiff has admitted in his complaint that the "first" disclosure was made in December 2005, and, therefore, that "the complaint itself sets forth everything necessary

to satisfy the affirmative defense" of negative causation. *Irvin*, 2007 WL 3037051 at *1. Indeed, defendants' reliance on unproven, highly fact specific arguments regarding the timing and content of disclosures only underscores the impropriety of resolving these issues on a motion to dismiss.[2]

Standing alone, plaintiff's complaint plausibly alleges in conformity with *Twombly* the essential elements of his § 11 claim: a material omission in the registration statement, purchase of shares without knowledge of such misrepresentation, and plaintiff's pre-suit sale of the shares at a loss. *McMahon*, 65 F.3d at 1047-48. And standing alone, plaintiff's complaint does not *on its face* plead facts sufficient to make a prima facie showing of negative causation. Therefore, under defendants' own reading of *Twombly*, plaintiff is not required at the pleading stage to allege additional facts in order to state a plausible claim. *Twombly*, 127 S. Ct. at 1974.

## 2.    The Complaint Adequately Alleges Standing

With regard to that aspect of defendants' motion that seeks reconsideration of the Court's constitutional standing analysis, there is no colorable claim that the Court overlooked controlling authority. Defendants may disagree with the Court's analysis, but this does not provide a viable basis for reconsideration. *Lujan*, 504 U.S. 555, which the Court relied upon, remains good law and sets forth the familiar Article III standing

---

[2] The Court is not insensitive to the practical consequences of labeling negative causation an affirmative defense rather than an element of plaintiff's prima facie claim. While failure to properly plead a claim may result in dismissal at the pleadings stage, *see, e.g. Twombly*, 127 S. Ct. at 1974, an affirmative defense must be raised in a responsive answer and necessitates additional motion practice and discovery. Nonetheless, given that § 11 does not require plaintiffs to plead the absence of loss causation, such a result is one that "'must be obtained by . . . amending the Federal Rules, and not by judicial interpretation.'" *Jones*, 549 U.S. at 200 (quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)).

requirements of (1) an injury in fact (2) that is traceable to defendants' actions and (3) redressable by the court. *Id.* 504 U.S. 560-61. *Lujan*, moreover, relies on the very case that defendants claim was overlooked. *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 508 (1975).) While statutory standing is not a substitute for constitutional standing, *see, e.g.*, *W.R. Huff Asset Mgm't Co., LLC v. Deloitte & Touche*, 549 F.3d 100 (2d Cir. 2008), defendants' constitutional and statutory standing arguments rely on the same flawed interpretation of plaintiff's complaint—that its allegations show the absence of both loss causation and an injury-in-fact traceable to defendants actions—and thus fail for the same reason. Plaintiff alleges that he purchased AtriCure shares based on a false and misleading registration statement and shortly thereafter sold those shares at a loss. These allegations are sufficient at the pleading stage to satisfy the constitutional requirement of a traceable injury in fact as well as loss causation under §11 (though pleading loss causation is not plaintiff's burden under the statute).[3] Plaintiff has *not* alleged that he resold his shares before the "first" disclosure of corrective information. Nor has he alleged that the decline in the value of AtriCure shares prior to his resale was otherwise not attributable to AtriCure's allegedly misleading registration statements. Thus plaintiff has not plead himself out of his complaint and he is entitled to proceed beyond the pleading stage.

### 3.     An Interlocutory Appeal Is Unwarranted

Finally, the Court does not find that the loss causation or standing arguments raised by defendants are appropriate for certification. Certification of an interlocutory

---

[3] The Court notes, but need not resolve, plaintiff's argument that a traceable injury in fact arises from the purchase of shares pursuant to a misleading registration statement whether or not monetary damages are suffered. (Pls.' Recon. Opp. Mem. 10-11.)

appeal under 28 U.S.C. § 1292(b) should only be granted if the order appealed (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Neither the first nor second criteria apply as the Court's opinion turns on the application of controlling authority to the complaint at hand, not to a controversial interpretation of those authorities. While an immediate appeal could advance the ultimate termination of the litigation, it could just as easily result in extended, piecemeal litigation. Indeed, even if defendants were successful on appeal, the case would return to this Court to resolve defendants' challenges to the claims of the Lead Plaintiffs. In short, this case does not exhibit the "exceptional circumstances [that will] justify a departure from the basic policy of postponing appellate review until after entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996).[4]

## CONCLUSION

For the reasons stated above, defendants' motion for reconsideration or, in the alternative, to certify an interlocutory appeal and stay the action **[34]** is denied.

---

[4] Because defendants' challenge to the complaint principally goes to whether plaintiff's allegations show the existence of a defense, the Court does not anticipate that the Supreme Court's decision in *Ashcroft v. Iqbal*, No. 07-1015, will require reconsideration of its September 13, 2007 Order. Like *Twombly*, *Ashcroft* principally involves the plaintiff's burden under Rule 8(a), and not the distinct rule that a plaintiff may plead itself out of court by pleading facts that establish an affirmative defense. *See* Pet. for Cert., *Ashcroft v. Iqbal*, No. 07-1015, at i (Feb. 6, 2008), *available at* 2008 WL 336225.

SO ORDERED.

Dated: New York, New York
        January 2 8 , 2009

                                    _____
                                            Richard J. Holwell
                                        United States District Judge